1  MEYERS MCCONNELL REISZ
   SIDERMAN, P.C.
2  Frederick S. Reisz (Bar No. 143962)
   Email:  reisz@meyersmcconnell.com
3  Kenton L. Robinson (Bar No. 153685)
   Email:  robinson@meyersmcconnell.com
4  11859 Wilshire Blvd., 4th Floor
   Los Angeles, CA  90025
5  Telephone:  (310) 312-0772
   Facsimile:  (310) 312-0656
6
   *Attorneys for Plaintiff*
7  *NAVIGATORS INSURANCE COMPANY*

8  *Of Counsel:*
   WILEY REIN LLP
9  Richard A. Simpson
   Email:  rsimpson@wileyrein.com
10 Charles  C. Lemley
   Email:  clemley@wileyrein.com
11 1776 K Street NW
   Washington, D.C.  20006
12 Telephone: (202) 719-7000
   Facsimile:  (202) 719-7049

13

14              UNITED STATES DISTRICT COURT FOR THE

15                 CENTRAL DISTRICT OF CALIFORNIA

16                        EASTERN DIVISION

17

18 NAVIGATORS INSURANCE            Case No. EDCV13-2110 ҺAҒ (SPx)
   COMPANY,
19
              Plaintiff,
20                              COMPLAINT FOR
        vs.                     DECLARATORY JUDGMENT
21
   DOMINIC J. DUBLINO; FEDERAL
22 DEPOSIT INSURANCE
   CORPORATION, as receiver for
23 AMTRUST BANK,

24           Defendants.

25

26       Navigators Insurance Company ("Navigators"), for its Complaint for

27 Declaratory Judgment, alleges on knowledge, information and belief as follows:

28

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

-1-

COMPLAINT FOR DECLARATORY JUDGMENT

## NATURE OF THE ACTION

1.     Navigators files this action to obtain a judicial determination and declaration as to the parties' respective rights and obligations under Real Estate Appraisers Errors and Omissions Insurance Policy No. PH12RAL105287IV, which Navigators issued to Dominic J. Dublino for the **policy period** June 25, 2012 to June 25, 2013 (the "Policy").[1]  A true and correct copy of the Policy, without the application, is attached hereto as Exhibit A.

2.     An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Policy.

3.     In particular, Navigators seeks a declaratory judgment that the Policy does not afford indemnity coverage for a **claim** asserted by Defendant the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for AmTrust Bank (the "FDIC-R"), against Dublino (the "Underlying *FDIC-R* Claim"), by virtue of a Policy exclusion barring coverage for **Regulatory Claims**, *i.e.*, **claims** based on or arising out of any **claim** made by, or on behalf of, the FDIC or any similar regulatory agency.

4.     Navigators also seeks a determination that it has no duty to defend Dublino in connection with the Underlying *FDIC-R* Claim, but is instead obligated only to pay **claim expenses** incurred by Dublino in defense of the Underlying *FDIC-R* Claim up to the applicable $100,000 aggregate sublimit of liability for **Regulatory Claims**.

## PARTIES

5.     Plaintiff Navigators is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York.  Navigators legally transacts insurance business in the State of California and within the geographical jurisdiction of this Court.

6.     Defendant Dublino is an individual residing in Riverside County,

---

[1] Terms bolded herein are defined in the Policy.

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd,
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

1    California, and is a citizen of California.

2        7.    AmTrust Bank was a federally chartered savings bank with its main

3    office and principal place of business in Cleveland, Ohio.  On December 4, 2009,

4    the Office of Thrift Supervision closed AmTrust Bank and appointed the FDIC to

5    serve as receiver pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C.

6    § 1821(c)(5).

7    **JURISDICTION AND VENUE**

8        8.    This is an action for declaratory judgment pursuant to the Federal

9    Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure

10   57, for the purposes of determining a question of actual controversy between the

11   parties as described more fully below.

12       9.    This action is currently ripe for adjudication.

13       10.    This Court has jurisdiction over this action pursuant to 28 U.S.C.

14   § 1331 and 12 U.S.C. § 1819(b)(2)(A) because the FDIC is a party and therefore

15   this controversy arises under the laws of the United States.

16       11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  A

17   substantial part of the events giving rise to the claims at issue occurred in this

18   District, and the individual defendant resides in this District.

19   **FACTUAL ALLEGATIONS**

20   **The Policy**

21       12.    Navigators issued the Policy to Dublino for the claims made and

22   reported **policy period** of June 25, 2012 to June 25, 2013.  Policy (Ex. A),

23   Declarations, Items 1 & 3.

24       13.    Subject to all applicable terms, conditions and exclusions, the Policy

25   provides that Navigators, the **Company**, will pay on behalf of the **Named Insured**

26         all sums in excess of the deductible that the **Named Insured** becomes legally
obligated to pay as **damages** and **claim expenses** as a result of a **claim** first

27   made against the **Named Insured** and reported in writing to the **Company**
during the **policy period** or **extended reporting period** (if applicable) by

28   reason of an act or omission, including **personal injury**, in the performance

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 3 -

of **professional services** by the **Named Insured**[.] Policy (Ex. A), Section I.A.

14.     Dublino is designated in Item 1 of the Declarations as the **Named Insured**.  Policy (Ex. A), Declarations, Item 1.

15.     **Claim** means "a demand for money or services received by the **Named Insured** arising out of an act or omission in the performance of **professional services**.  A **claim** also includes the service of suit or the institution of any arbitration proceeding against the **Named Insured**."  Policy (Ex. A), Section III.B.

16.     The Policy defines **damages** to include "any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company**'s written consent," but does not include certain specified items. Policy (Ex. A), Section III.E.

17.     The Policy defines **claim expenses** to include "[f]ees charged by attorneys designated by the **Company** or designated by the **Named Insured** with the **Company's** prior written consent" and "[a]ll other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a **claim**, if incurred by the **Company** or by the **Named Insured** with the **Company's** prior written consent."  Policy (Ex. A), Section III.C.

18.     The Policy has a $1,000,000 per **claim** limit of liability for **damages** and a $1,000,000 per **claim** limit of liability for **claim expenses**.  Policy (Ex. A), Section II.A.-B. & Declarations, Item 4.

19.     The Policy also has a $1,000,000 aggregate limit of liability for **damages** and a $1,000,000 aggregate limit of liability for **claim expenses**.  Policy (Ex. A), Section II.C.-D. & Declarations, Item 4.

20.     In Section IV., "Exclusions," the Policy provides that "[t]he **Company** will not defend or pay any **claim**" based on or arising out of specified

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 4 -

COMPLAINT FOR DECLARATORY JUDGMENT

1  circumstances.  *See generally* Policy (Ex. A), Section IV.

2       21.    Endorsement No. 3 to the Policy—titled "Regulatory Claims Sublimit

3  – Claim Expenses Endorsement"— provides as follows:

4      In consideration of the premium charged, it is agreed that the following is
    added to Section IV. EXCLUSIONS of the policy:

5

6      [The **Company** will not defend or pay any **claim** . . . ]

    Based on or arising out of any **claim** made by, or on behalf of, the Federal

7      Deposit Insurance Corporation or any similar federal or state regulatory
    agency (a 'Regulatory Claim').

8
    It is further agreed that the following is added to Section II.  LIMITS OF

9      LIABILITY AND DEDUCTIBLE of the policy:

10      K.    Regulatory Claims Sublimit

11          Notwithstanding the Exclusion above, the **Company** will pay on behalf
        of the **Named Insured**, **claim expenses** incurred by the **Named**

12          **Insured** in defense of a Regulatory Claim otherwise covered under this
        policy, subject to an aggregate maximum sublimit of liability of

13          $100,000 for all such Regulatory Claims (the 'Regulatory Claims
        Sublimit').  The Regulatory Claims Sublimit shall be part of, and not in

14          addition to, the amount shown in item 4D. in the Declarations as the
        '**Claim expenses** Limit of Liability – Policy Aggregate.'

15

16      All other provisions of this policy remain unchanged.

17  Policy (Ex. A), Sections II & IV., as amended by Endorsement No. 3 (the

18  "Regulatory Claims Endorsement").

19  **The Underlying *FDIC-R* Claim**

20      22.    The Underlying *FDIC-R* Claim arises out of Dublino's preparation of

21  written appraisals for residential properties located at 2387 Fullerton Avenue,

22  Salton City, California (the "Fullerton Avenue Property"); 2583 Dolphin Drive,

23  Salton City, California (the "Dolphin Drive Property"); and1928 Betty Avenue,

24  Thermal, California (the "Betty Avenue Property") pursuant to agreements with

25  Integra Funding Group ("Integra").

26      23.    On or about March 27, 2007, Dublino prepared an appraisal report that

27  valued the Fullerton Avenue Property at $250,000.  According to the FDIC-R,

28  AmTrust Bank relied on Dublino's appraisal report in deciding to fund a loan in the

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 5 -

COMPLAINT FOR DECLARATORY JUDGMENT

amount of $200,000 to Robert V. Reznichek and Nancy E. Reznichek for a cash-out refinance of the Fullerton Avenue Property.

24.    On or about March 23, 2007, Dublino prepared an appraisal report that valued the Dolphin Drive Property at $250,000.  According to the FDIC-R, AmTrust Bank relied on Dublino's appraisal report in deciding to fund a loan in the amount of $200,000 to the Reznicheks for a cash-out refinance of the Dolphin Drive Property.

25.    On or about March 27, 2007, Dublino prepared an appraisal report that valued the Betty Avenue Property at $250,000.  According to the FDIC-R, AmTrust Bank relied on Dublino's appraisal report in deciding to fund a loan in the amount of $200,000 to the Reznicheks for a cash-out refinance of the Betty Avenue Property.

26.    In April 2008, the Reznicheks defaulted on the mortgage loans funded by AmTrust Bank for the Fullerton Avenue Property, the Dolphin Drive Property, and the Betty Avenue Property (together, the "Properties").  In August and September 2008, the Properties were referred to AmTrust Bank for foreclosure.

27.    AmTrust Bank purchased the Fullerton Avenue Property for $35,000 by credit bid in April 2009 and then sold the Fullerton Avenue Property for $32,000 in November 2009.

28.    AmTrust Bank purchased the Dolphin Drive Property for $40,000 by credit bid in December 2008 and then sold the Dolphin Drive Property for $46,000 in May 2009.

29.    The specific details regarding any foreclosure proceedings for the Betty Avenue Property are presently unknown to Navigators.

30.    As noted, the Office of Thrift Supervision closed AmTrust Bank on December 4, 2009, and appointed the FDIC as receiver.

31.    On December 3, 2012, the FDIC-R filed a lawsuit against Dublino in the United States District Court for the Central District of California styled *Federal*

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 6 -

COMPLAINT FOR DECLARATORY JUDGMENT

1   *Deposit Insurance Corp.*, as Receiver for AmTrust Bank v. *Dominic J. Dublino, et*

2   *al.*, Case No. 12-cv-2121-TJH-OP (the "*FDIC-R* Litigation"). The operative

3   complaint in the *FDIC-R* Litigation asserts that lenders—including AmTrust

4   Bank—were intended third-party beneficiaries of Dublino's agreements with

5   Integra to prepare appraisal reports for the Properties and further alleges that

6   Dublino materially breached these agreements by preparing an appraisal report that

7   (a) incorrectly indicated that none of the comparable sales had been sold within the

8   year prior to each comparable property's most recent sale when, in actuality, three

9   of these comparable properties had been sold twice in the same day; (2) failed to

10   disclose that three of the comparable properties had been previously owned by the

11   Reznicheks, the borrowers; and (3) misrepresented that the comparable properties

12   had been publicly listed for sale on the Multiple Listing Service, when none of the

13   properties had been publicly listed. The operative complaint in the *FDIC-R*

14   Litigation also asserts a claim against Dublino for negligent misrepresentation.

15       32.    The final pre-trial conference in the *FDIC-R* Litigation is currently set

16   for January 27, 2014.

17   **Dublino's Request for Coverage**

18       33.    On January 15, 2013, Dublino notified Navigators of the *FDIC-R*

19   Litigation.

20       34.    By letter of January 23, 2013, Navigators explained to Dublino that, by

21   virtue of the Regulatory Claims Endorsement, the Policy does not afford coverage

22   for any **damages** arising out of the Underlying *FDIC-R* Claim. Navigators further

23   explained that it would pay **claim expenses** incurred in the defense of the

24   Underlying *FDIC-R* Claim up to the aggregate, maximum sublimit of liability of

25   $100,000 established by the Regulatory Claims Sublimit. Navigators also agreed

26   to retain defense counsel to represent Dublino's interests in connection with the

27   Underlying *FDIC-R* Claim, subject to a full and complete reservation of its rights

28   under the Policy and applicable law, including its rights to pursue a declaratory

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 7 -

1 determination of its duties under the Policy and to seek reimbursement of defense
2 costs and expenses paid in connection with causes of action subsequently
3 determined not to be covered under the Policy.

4     35.    Based on the proceedings to date and the nature of the claims being
5 asserted by the FDIC-R, Dublino is likely to incur more than $100,000 in **claim**
6 **expenses** in connection with the Underlying *FDIC-R* Claim.

## COUNT I

### For a Declaration that the Regulatory Claims Endorsement Bars Indemnity Coverage for the Underlying *FDIC-R* Claim

10     36.    Navigators realleges and incorporates by reference the allegations of
11 Paragraphs 1 through 35 of this Complaint as if fully set forth herein.

12     37.    As noted above, the Policy provides that Navigators will not pay any
13 **claim** based on or arising out of any **Regulatory Claim**. *See* Policy (Ex. A),
14 Section IV., as amended by the Regulatory Claims Endorsement.

15     38.    The Underlying *FDIC-R* Claim constitutes a **Regulatory Claim**, as
16 defined by the Policy's Regulatory Claims Endorsement, because it is a **claim** made
17 by the FDIC. *See* Policy (Ex. A), Section IV., as amended by the Regulatory
18 Claims Endorsement.

19     39.    Because the Underlying *FDIC-R* Claim is a **Regulatory Claim**, the
20 exclusion in the Regulatory Claims Endorsement applies to bar indemnity
21 coverage.

22     40.    By reason of the foregoing, Navigators is entitled to a judgment
23 declaring that the Policy provides no indemnity coverage for the Underlying *FDIC-*
24 *R* Claim.

25 ///
26 ///
27 ///
28 ///

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

## COUNT II

**For a Declaration that Navigators Has No Duty to Defend Dublino in Connection with the Underlying *FDIC-R* Claim or to Pay Claim Expenses Beyond the $100,000 Maximum, <u>Aggregate Regulatory Claims Sublimit of Liability</u>**

41.     Navigators realleges and incorporates by reference the allegations of Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     As noted above, the Policy provides that Navigators will not defend any **claim** based on or arising out of any **Regulatory Claim**. *See* Policy (Ex. A), Section IV., as amended by the Regulatory Claims Endorsement.  Notwithstanding this exclusion, the Policy—by virtue of the Regulatory Claims Sublimit—obligates Navigators to pay **claim expenses** incurred by Dublino in defense of a **Regulatory Claim**, subject to a $100,000 aggregate, maximum sublimit of liability.  Policy (Ex. A), Section II., as amended by the Regulatory Claims Endorsement.

43.     The Underlying *FDIC-R* Claim constitutes a **Regulatory Claim**, as defined by the Policy's Regulatory Claims Endorsement, because it is a **claim** made by the FDIC.

44.     Because the Underlying *FDIC-R* Claim is a **Regulatory Claim**, the Regulatory Claims Endorsement applies, meaning that Navigators has no duty to defend Dublino in connection with the Underlying *FDIC-R* Claim, but instead is obligated only to pay **claim expenses** incurred by Dublino in defense of the Underlying *FDIC-R* Claim, subject to the $100,000 Regulatory Claims Sublimit.

45.     By reason of the foregoing, Navigators is entitled to a judgment declaring that it has no duty under the Policy to defend Dublino in connection with the Underlying *FDIC-R* Claim or to pay any **claim expenses** incurred in connection with the Underlying *FDIC-R* Claim beyond the $100,000 Regulatory Claims Sublimit.

///

///

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 9 -

COMPLAINT FOR DECLARATORY JUDGMENT

1    WHEREFORE, Navigators respectfully requests that this Court:

2    A.    Enter judgment declaring that, for the reasons stated in Count I, the Policy does not provide indemnity coverage for the Underlying *FDIC-R* Claim pursuant to Section IV., as amended by the Regulatory Claims Endorsement;

4    B.    Enter judgment declaring that, for the reasons stated in Count II and pursuant to Sections II and IV of the Policy, as amended by the Regulatory Claims Endorsement, Navigators has no duty to defend Dublino in connection with the Underlying *FDIC-R* Claim or to pay **claim expenses** incurred in connection with the Underlying *FDIC-R* Claim beyond the $100,000 Regulatory Claims Sublimit;

8    C.    Award Navigators its fees and costs incurred herein; and

9    D.    Award Navigators all other relief to which it may be entitled.

Respectfully submitted,

Dated:  November 14, 2013    By: _____

*Of Counsel:*                          MEYERS MCCONNELL REISZ
WILEY REIN LLP                  SIDERMAN, P.C.
Richard A. Simpson              Frederick S. Reisz (Bar No. 143962)
Charles C. Lemley               Kenton L. Robinson (Bar No. 153685)
1776 K Street NW               11859 Wilshire Blvd., 4th Floor
Washington, D.C.  20006    Los Angeles, CA  90025
Telephone:  (202) 719-7000  Telephone:  (702) 253-1377
Facsimile:  (202) 719-7049   Facsimile:  (702) 248-6192
rsimpson@wileyrein.com      reisz@meyersmcconnell.com
clemley@wileyrein.com        robinson@meyersmcconnell.com

*Attorneys for Plaintiff Navigators Insurance Company*

Meyers McConnell Reisz Siderman
A Professional Corporation
11859 Wilshire Blvd.
Fourth Floor
Los Angeles, CA 90025
(310) 312-0772

- 10 -

COMPLAINT FOR DECLARATORY JUDGMENT

# EXHIBIT A

# NAVIGATORS INSURANCE COMPANY

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.

### PLEASE READ THIS POLICY CAREFULLY.

## REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY
## DECLARATIONS

POLICY NUMBER: __PH12RAL105287IV__   RENEWAL OF: ____PH11RAL105287IV____

1. NAMED INSURED:    Dominic J. Dublino

2. ADDRESS:    39569 Currant Court
Murrieta, CA 92563

3. POLICY PERIOD:   FROM:   06/25/2012   TO:   06/25/2013
12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4. LIMITS OF LIABILITY:
   A. $ ____1,000,000____ **Damages** Limit of Liability – Each **Claim**
   B. $ ____1,000,000____ **Claim Expenses** Limit of Liability – Each **Claim**
   C. $ ____1,000,000____ **Damages** Limit of Liability – Policy Aggregate
   D. $ ____1,000,000____ **Claim Expenses** Limit of Liability – Policy Aggregate

5. DEDUCTIBLE (Inclusive of claim expenses):    A. $ 500 _____Each Claim
B. $ 1,000 _____Aggregate

6. PREMIUM: $   850.00

7. RETROACTIVE DATE:    06/25/2006

8. FORMS ATTACHED:    NAV RAL NIC PF (02/11)   NAV RAL 300 CA (02 11)
NAV RAL 008 (02 11)     NAV RAL 002 (02 11)

PROGRAM ADMINISTRATOR:    Herbert H. Landy Insurance Agency Inc.
75 Second Ave Suite 410  Needham, MA 02494-2876

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.

[Emily Miner]
Secretary

[Stanley A. Galanski]
President

NAV RAL DEC (02 11)                    Page 1 of 1

This endorsement # 1, effective 06/25/2012 forms a part of Policy # PH12RAL105287IV
issued to Dominic J. Dublino

# RETIREMENT EXTENDED REPORTING PERIOD AMENDMENT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium paid, it is agreed that Section VI. EXTENDED REPORTING PERIODS,
paragraph D. Retirement Reporting Period Option, subparagraph 1, is deleted in its entirety
and replaced with the following:

1. If, after the named Insured reaches the age of 65, and having been continuously insured
   by the the Company or another insurer through The Realtors Insurance Purchasing Group
   Association on a claims-made basis for a minimum of 5 years, the Named Insured retires
   during the policy period, an unlimited Extended Reporting Period  will be granted at no
   additional premium.

All other provisions of this policy remain unchanged.

NAV RAL 008 (02 11)                      Page 1 of 1                         DUBD81-1

Exhibit A
3 of 24  -13-

This endorsement # 2, effective 06/25/2012 forms a part of Policy # PH12RAL105287IV
issued to Dominic J. Dublino

# ADDITIONAL INSURED ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium charged, it is agreed the person or entity designated below is insured under
this policy solely for vicarious liability arising from professional services performed by the Named Insured. Nothing
contained in this endorsement will serve to increase the Company's limit of liability.

Name of person or entity:

Dublino Appraisal
Dublino Appraisal
Dublino, Inc.

All other provisions of this policy remain unchanged.

This endorsement # _____, effective _____ forms a part of Policy  #_____

issued to _____.

# CALIFORNIA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

Section V. CONDITIONS, paragraph I. Cancellation/Nonrenewal is deleted in its entirety and replaced with the following:

I.   Cancellation/Nonrenewal

   1.   Cancellation

      a.   This policy of insurance may be cancelled by the **Named Insured** by surrender thereof to the **Company** or by mailing to the **Company** written notice stating when thereafter the cancellation shall be effective.

      b.   If this insurance has been in effect for more than 60 days or is a renewal, the **Company** may cancel this insurance only upon the occurrence, after the effective date of the insurance, of one or more of the following:

         i.   Nonpayment of premium, including payment due on prior insurance the **Company** issued and which was due during the current insurance term covering the same risks.

         ii.   Discovery of fraud by the **Named Insured** in obtaining this insurance; or by the **Named Insured** in pursuing a **claim** under this insurance.

         iii.   A judgment by a court or an administrative tribunal that the **Named Insured** has violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

         iv.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the **Named Insured** which materially increase any of the risks insured against.

         v.   Failure by the **Named Insured** to implement reasonable loss control requirements, agreed to by the **Named Insured** as a condition of policy issuance, or which were conditions precedent to the Company's use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

         vi.   A determination by the Commissioner that the loss of, or changes in, the **Company's** reinsurance covering all or part of the risk would threaten the **Company's** financial integrity or solvency.

         vii.   A determination by the Commissioner that a continuation of the policy coverage could place the **Company** in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten solvency.

NAV RAL 300 CA (02 11)

viii. A change by the Named Insured in the activities or property of the commercial or industrial enterprise which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

c. The Company will mail or deliver advance notice of cancellation stating the reason for cancellation to the Named Insured and to the producer of record at least:

   i. 10 days before the effective date of cancellation if the Company cancels for a reason listed in paragraph b.i. or b.ii.

   ii. 30 days before the effective date of cancellation if the Company cancels for any other reason listed in paragraph b.

d. If this policy is cancelled, the Company will send the Named Insured any premium refund due. If cancelled by the Company or by the Named Insured, the refund will be pro rata.

2. Nonrenewal

a. Subject to the provision of paragraphs b. and c. below, if the Company elects not to renew this insurance, the Company will mail or deliver written notice stating the reason for nonrenewal to the Named Insured and to the producer of record at least 60 days but not more than 120 days before the expiration or anniversary date.

b. The Company will mail or deliver the notice to the Named Insured and the producer of record at the mailing address shown in the Declarations.

c. The Company is not required to send notice of nonrenewal in the following situations:

   i. If the transfer or renewal of insurance without any changes in terms, conditions or rates is between the Company and a member of the Company's insurance group.

   ii. If the insurance has been extended for 90 days or less, provided that notice has been given in accordance with paragraph a.

   iii. If the Named Insured has obtained replacement coverage or if the Named Insured has agreed, in writing, within 60 days of the termination of the insurance, to obtain that coverage.

   iv. If the insurance is for a period of no more than 60 days and the Named Insured is notified at the time of issuance that it will not be renewed.

   v. If the Named Insured requests a change in the terms or conditions or risks covered by the insurance within 60 days of the end of the insurance period.

   vi. If the Company has made a written offer to the Named Insured, in accordance with the timeframes shown in paragraph a., to renew the insurance under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

All other terms and conditions of this policy remain unchanged.

## CALIFORNIA COMPLAINT NOTICE

In the event you need to contact someone regarding a dispute about your policy, premium or a claim that you have filed, please contact your broker or agent. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

**Navigators Insurance Company**
**1 Penn Plaza**
**New York NY 10119**

**Telephone Number: (888) 222-2642**

If you have been unable to contact or obtain satisfaction from the broker, agent, or company, you may contact the Consumer Services Division at:

**Consumer Services Division**
**California Department of Insurance**
**300 South Spring Street, South Tower**
**Los Angeles, CA 90013**

**Toll Free Number: (800) 927-4357 or (213) 897-8921**

Please be informed that written correspondence is preferred so that a record of your inquiry is maintained. In addition, have your policy number available when contacting your broker, agent, company, or the Consumer Services Division.

This notice is for information only and does not become a part or condition of this policy.

U.S. TREASURY DEPARTMENTS
OFFICE OF FOREIGN ASSETS CONTROL ("OF AC")
ADVISORY NOTICE TO POLICY HOLDERS

No coverage is provided by this Policy Holder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

§   Foreign agents;
§   Front organizations;
§   Terrorists;
§   Terrorist organizations; and
§   Narcotics traffickers;

As "Specially Designated National and Blocked Persons". This list can be located on the United States Treasury s web site-http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



*Insuring A World In Motion*

NAV OFAC

# NAVIGATORS INSURANCE COMPANY

A "Stock" Company
Home Office: One Penn Plaza, New York, NY 10119

## THIS IS A CLAIMS MADE AND REPORTED POLICY.
## PLEASE READ THE ENTIRE POLICY CAREFULLY.

## REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

Words and phrases that appear in **bold** print have special meanings that are defined in section III., DEFINITIONS.

I.   INSURING AGREEMENTS

A.   Coverage

The **Company** will pay on behalf of the **Named Insured** all sums in excess of the deductible that the **Named Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Named Insured** and reported in writing to the **Company** during the **policy period** or **extended reporting period** (if applicable) by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Named Insured**, provided that:

1.   No such act or omission, or **related act or omission**, was committed prior to the **retroactive date**; and

2.   Prior to the inception date of the first policy issued by the **Company**, and continuously renewed, the **Named Insured** had no basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**.

B.   Defense

The **Company** has the right and duty to defend any **claim** against the **Named Insured** even if any of the allegations of the **claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Company** or, at the **Company's** option, by the **Named Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

C.   Settlement

The **Company** will have the right to make, with the consent of the **Named Insured**, any settlement of a **claim** under this policy. If the **Named Insured** refuses to consent to a settlement within the policy's applicable **damages** limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability for **claim expenses** will be reduced to the amount of **claim expenses** incurred up to the date on which the **Named Insured** refused to consent to the settlement. Thereafter, there shall be a single combined limit of liability for both **damages** and **claim expenses** in an amount of total **damages** for which the **claim** could have been settled. The **Company** is not obligated to pay any **damages** or **claim expenses**, or to defend or continue to defend any such **claim**, after this single combined limit of liability has been exhausted.

Exhibit A
9 of 24  -19-

D. Exhaustion of Limits

The Company is not obligated to pay any damages or claim expenses, or to defend or continue to defend any claim, after the damages limit of liability has been exhausted, or after the Company has deposited the remaining damages limit of liability into a court of competent jurisdiction or tendered the remaining damages limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured, regardless of whether the claim expenses limit of liability has been exhausted.

II.  LIMITS OF LIABILITY AND DEDUCTIBLE

A.  Damages Limit of Liability - Each Claim

Subject to paragraph C. below, the Company's limit of liability for damages for each claim first made and reported in writing to the Company during the policy period will not exceed the amount shown in item 4A. in the Declarations for "Damages Limit of Liability - Each Claim".

B.  Claim expenses Limit of Liability - Each Claim

Subject to paragraph D. below, the Company's limit of liability for claim expenses for each claim first made and reported in writing to the Company during the policy period will not exceed the amount shown in item 4B. in the Declarations for "Claim expenses Limit of Liability - Each Claim".

C.  Damages Limit of Liability - Policy Aggregate

The Company's limit of liability for damages for all claims first made and reported in writing to the Company during the policy period will not exceed the aggregate amount shown in item 4C. in the Declarations as the "Damages Limit of Liability - Policy Aggregate".

D.  Claim expenses Limit of Liability - Policy Aggregate

The Company's limit of liability for claim expenses for all claims first made and reported in writing to the Company during the policy period will not exceed the aggregate amount shown in item 4D. in the Declarations as the "Claim expenses Limit of Liability - Policy Aggregate."

E.  Deductible

1.  Each Claim

Subject to paragraph 2. below, the deductible amount shown in Item 5A. in the Declaration is the Named Insured's deductible obligation for each claim and applies to the payment of damages and claim expenses. The deductible will be paid by the Named Insured. The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

2.  Aggregate

The deductible amount shown in Item 5B. in the Declarations is the Named Insureds maximum deductible obligation for all claims.

F.  Early Claim Resolution Incentive

If a claim is resolved by settlement, with the consent of the Named Insured and the Company, within one (1) year following the date that the claim is reported in writing to the Company, the Named Insured will be reimbursed or credited 50% of the deductible, but not to exceed a reimbursement of $5,000 per claim and $25,000 per policy period for all such claims resolved or concluded in accordance with this section II.F.

G.  Multiple Claims and Claimants

The limits of liability for damages and claim expenses shown in the Declarations is the maximum amount the Company will pay under this policy for damages and claim expenses, respectively, regardless of the number of claims made or claimants.  All related claims, whenever made, shall be considered a single claim first made when the earliest of the related claims was first made, and first reported when the earliest of the related claims was reported in writing to the Company; provided, however, that the Named Insured must report all claims as soon as reasonable in accordance with Section V. CONDITIONS, paragraph A.1.

H.  Multiple Policies

If this policy and any other policy issued by the Company provide coverage for the same claim against the Named Insured, the maximum limit of liability under all the policies combined shall not exceed the highest remaining applicable limit of liability for the claim under any one policy.

I.  Supplementary Payments

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

1.  Reimbursement of Expenses

The Company will pay up to $500.00 for loss of earnings to the Named Insured for each day, or part of a day, the Named Insured is in attendance, at the Company's request, at a trial, hearing, mediation or arbitration proceeding involving a claim against the Named Insured. The maximum amount payable, regardless of the number of trials, hearings, mediations or arbitration proceedings, shall be $7,500 per claim and $25,000 per policy period.

2.  Disciplinary Actions

The Company will reimburse the Named Insured for reasonable attorneys fees, costs and expenses incurred resulting from the investigation or defense of a disciplinary action first received by the Named Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of professional services. The maximum amount payable, regardless of the number of disciplinary actions, shall be $2,500 per claim and $25,000 per policy period.  The Company shall not be obligated to defend any disciplinary action, or pay any fine, penalty or award resulting from any disciplinary action.

3.  Subpoena Expenses

The Company will pay expenses incurred while assisting the Named Insured in responding to a subpoena which the Named Insured first receives and reports in writing to the

Company during the policy period resulting from the performance of professional services by the Named Insured. The maximum amount payable for subpoena expenses is $5,000 per subpoena; provided, however, that all subpoenas arising out of related acts or omissions shall be deemed to constitute a single subpoena.

J.  Coverage Extension

The Company will pay, as part of the applicable Limit of Liability, up to $100,000 to the Named Insured for damages and claim expenses as a result of all claims reported to the Company during the policy period by reason of a claim brought against the Named Insured, and arising out of professional services rendered on behalf of the Named Insured, for discrimination on the basis of race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference, including resulting personal injury.

This sub-limit is an aggregate limit of liability that is included within, and not addition to the Damages or Claim Expenses Limit of Liability    Policy Aggregate stated in the Declarations.

III.  DEFINITIONS

A.  Bodily injury means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. Bodily injury also means mental illness, mental anguish, emotional distress, pain, suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

B.  Claim means a demand for money or services received by the Named Insured arising out of an act or omission in the performance of professional services.  A claim also includes the service of suit or the institution of an arbitration proceeding against the Named Insured.

C.  Claim expenses means:

1.  Fees charged by attorneys designated by the Company or designated by the Named Insured with the Company's prior written consent;

2.  All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a claim, if incurred by the Company or by the Named Insured with the Company's prior written consent; and

3.  Premiums on appeal bonds, attachment bonds or similar bonds; provided, however, the Company is not obligated to apply for or furnish any such bond.

Claim expenses do not include fees, costs or expenses of employees or officers of the Company, or salaries, loss of earnings or other remuneration by or to the Named Insured.

D.  Company means the insurance company named in the Declarations.

E.  Damages means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the Company's written consent.  Damages also includes punitive or exemplary amounts, to the extent such amounts are insurable under the applicable state law.

Damages do not include:

1.  The return, reduction or restitution of fees, commissions, expenses or costs for **professional services** performed, or to be performed, by the **Named Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by the **Named Insured**;

2.  Fines, penalties, forfeitures or sanctions;

3.  The multiplied portion of any multiplied awards; or

4.  Injunctive or declaratory relief.

F.  **Disciplinary action** means a proceeding before any state licensing board, local real estate board or other governmental body regulating professional conduct, alleging misconduct in providing **professional services**. **Disciplinary action** does not include criminal charges.

G.  **Extended reporting period** means the period of time after the end of the **policy period** for reporting claims to the **Company** that are made against the **Named Insured** during the applicable **extended reporting period** by reason of an act or omission, which was committed prior to the end of the **policy period** and on, or subsequent to, the **retroactive date** and is otherwise covered by this policy.

H.  **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

I.  **Named Insured** means the person specified in item **1**. in the Declarations.

J.  **Personal injury** means injury other than **bodily injury** arising out of one or more of the following offenses, by reason of an act or omission by the **Named Insured** in the performance of **professional services**:

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner, of material that:

    a.  Slanders or libels a person or organization or disparages a person s or organization s goods, products or services; or

    b.  Violates a person s right of privacy;

    Except, in either case, oral or written publication in any manner which arises out of advertising, broadcasting or telecasting activities conducted by, or on behalf of, the **Named Insured**.

K.  **Policy period** means the period of time from the effective date shown in item **3**. in the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

L.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

NAV RAL NIC PF (02 11)                    5 of 14

M. **Property damage** means:

  1. Physical injury to tangible property, including all resulting loss of use of that property; or

  2. Loss of use of tangible property that is not physically injured.

N. **Professional services** means services performed for others by the **Named Insured** in the capacity as a properly licensed or certified appraiser of real estate, notary public, or a member of a real estate accreditation, standards review or similar real estate board or committee.

  **Professional Services** does not include the supervision of, subcontracting to, assignment to or referral of any portion of any contract, project or engagement by the **Named Insured**.

O. **Related claims** means all claims arising out of a single act or omission or **related acts or omissions** in the performance of **professional services**.

P. **Related acts or omissions** means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

Q. **Retroactive date** means the date shown in item 7. in the Declarations.

IV. **EXCLUSIONS**

The **Company** will not defend or pay any **claim**:

A. Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the **Named Insured**;

B. Based on or arising out of **bodily injury** or **property damage**;

C. Based on or arising out of discrimination, humiliation, harassment, or misconduct. Including, but not limited to, **claims** based on allegations relating to an individual s race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. However, this exclusion does not apply to any coverage afforded by Section II. Limit of Liability and Deductible, paragraph J. Coverage Extensions;

D. Based on or arising out of the insolvency or bankruptcy of the **Named Insured**;

E. Based on or arising out of:

  1. Any disputes involving the **Named Insured's** fees, commissions or charges;

  2. The conversion, misappropriation, commingling or defalcation of funds or other property;

  3. The failure to pay or collect premium, escrow or tax money; or

  4. The gaining of any personal profit or advantage to which the **Named Insured** is not legally entitled;

F. Based on or arising out of the representation of clients in connection with any securities transaction (either registered or exempt) including, but not limited to, bond or other debt offerings, public stock offerings, property syndication or real estate investment trusts;

NAV RAL NIC PF (02 11)                     6 of 14

G. Based on or arising out of the actual or attempted purchase of property by the Named Insured;

H. Based on or arising out of the actual or attempted appraisal of property by the Named Insured on or after the date or time of the act or omission giving rise to such claim, if:

  1. The Named Insured in any part owned such property;

  2. The Named Insured was the developer, builder, real estate broker or salesperson of such property;

  3. Such appraisal services were in exchange for stock, partial ownership or investment in such property; or

  4. The Named Insured was employed or subcontracted by a real estate broker or sales person who was a party to any transaction involving the appraised property;

I. Based on or arising out of actual or attempted purchase of property by, or appraisal of property developed, constructed or owned by:

  1. Any entity in which the Named Insured has financial interest;

  2. Any entity which has any financial interest in the Named Insured; or

  3. Any entity which is under the same financial control as the Named Insured, provided that such financial interest existed at the time of the act or omission giving rise to the claim;

J. Based on or arising out of any actual or alleged violation of:

  1. The Employee Retirement Income Security Act of 1974;

  2. The Securities Act of 1933;

  3. The Securities Exchange Act of 1934; or

  4. Any state Blue Sky or Securities law;

  Or any rules, regulations or amendments issued in relation to such acts, or similar state or federal statutes or regulations, including any claim based upon common law principles of liability;

K. Based on or arising out of any guarantee or promise of future status, performance or valuation in the course of performing professional services by the Named Insured;

L. Based on or arising out of:

  1. The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of pollutants;

  2. Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of pollutants; or

3.  The installation, removal, disposal, handling, use or existence of, exposure to, contact with, or ingestion of lead paint or any substance or matter containing lead paint or the residue of lead paint;

M.  Based on or arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or any loss cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, fungi or bacteria, by the Named Insured or by any other person or entity;

N.  Based on or arising out of liability assumed by the Named Insured under any contract or agreement, unless such liability would have attached to the Named Insured even in the absence of such contract or agreement;

O.  Based on arising out of misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right or unauthorized use of confidential, privileged or non-public material or information;

P.  Based on or arising out of the sale of insurance or the failure to effect or maintain adequate levels of insurance;

Q.  Based on or arising out of the alleged notarized certification or acknowledgement by the Named Insured of a signature on any document that the Named Insured did not witness being placed on the document;

R.  Based on or arising out of the rendering of, or failure to render, professional services by the Named Insured as an employee, owner, partner, stockholder, director or officer of any business enterprise not named in the Declarations.


V.  CONDITIONS

A.  Reporting of Claims and Potential Claims:

1.  The Named Insured, as a condition precedent to the obligations of the Company under this policy, will give written notice to the Company, as soon as reasonable, of any claim made against the Named Insured.

2.  If during the policy period the Named Insured becomes aware of any act or omission which may reasonably be expected to be the basis of a claim against the Named Insured, including, but not limited to, any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the Named Insured responsible for any alleged act or omission and gives written notice to the Company with full particulars, including:

a.  The specific act or omission;

b.  The dates and persons involved;

c.  The identity of anticipated or possible claimants;

d.  The circumstances by which the Named Insured first became aware of the possible claim; and

Exhibit A
16 of 24  -26-

   e.   Potential damages or injury.

Then any claim that is subsequently made against the Named Insured arising out of such act or omission will be deemed to have been made on the date such written notice was received by the Company.

3.   Notices pursuant to Conditions A.1 and A.2 above must be mailed to the Company at the following address:

Navigators Pro   Claims Department
One Penn Plaza, 32nd Floor
New York, NY  10119
Fax: 212-613-4300
navproclaims@navg.com

B.  Claim Reporting Grace Period

This policy will provide coverage for claims that are first made against the Named Insured during the policy period and reported by the Named Insured in writing to the Company within thirty (30) days after the expiration of the policy period, provided that prior to the expiration of this policy, the Named Insured was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due.

The claim reporting grace period does not extend the policy period.

C.  Assistance and Cooperation

1.   The Named Insured will cooperate with the Company and upon the Company's request, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a claim.

2.   The Named Insured will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to the Named Insured in connection with a claim.

3.   The Named Insured will not, except at the Named Insured's own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the Company. The Company shall have no obligation to pay or reimburse any person or entity for sums expended to defend any claim otherwise covered under this policy prior to written notice of such claim being received by the Company.

D.  Action against the Company

1.   No action may be brought against the Company unless, as a condition precedent thereto:

   a.   The Named Insured has fully complied with all the terms of this policy; and

   b.   Until the amount of the Named Insured's obligation to pay has been finally determined either by judgment against the Named Insured after actual trial and appeal or by written agreement of the Named Insured, the claimant and the Company.

2. Nothing contained in this policy will give any person or organization the right to join the Company as a defendant or co-defendant or other party in any action against the Named Insured to determine the Named Insured's liability.

E. **Bankruptcy**

Bankruptcy or insolvency of the Named Insured or of the Named Insured's estate will not relieve the Company of any of its obligations hereunder.

F. **Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance.

G. **Subrogation**

In the event of any payment for any claim under this policy, the Company will be subrogated in the amount of such payment to all the Named Insured's rights of recovery against any person or organization. The Named Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Named Insured will do nothing to prejudice such rights.

H. **Changes**

Notice to any agent of the Company, or knowledge possessed by any such agent or by any other person, will not effect a waiver or a change in any part of this policy and will not prevent or preclude the Company from asserting or invoking any right or provision of this policy. None of the provisions of this policy may be waived, changed or modified except by a written endorsement issued by the Company to form a part of this policy.

I. **Cancellation/Nonrenewal**

1. This policy may be cancelled by the Named Insured by returning it to the Company. The Named Insured may also cancel this policy by giving written notice to the Company stating at what future date cancellation is to be effective.

2. The Company may cancel or non-renew this policy by sending written notice to the Named Insured at the address last known to the Company. The Company will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the Company cancels this policy because the Named Insured has failed to pay a premium when due, this policy may be canceled by the Company by mailing to the Named Insured written notice stating when, not less than 10 days thereafter, such cancellation will be effective. The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company will be equivalent to mailing.

3. If the Company cancels this policy, the earned premium will be computed pro rata. If the Named Insured cancels this policy, the Company will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

Exhibit A
18 of 24  -28-

4.  The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this policy.

J.  **Territory**

This policy applies to an act or omission taking place anywhere in the world provided that any suit is brought against the Named Insured within the United States of America, its territories or possessions, Puerto Rico or Canada.

K.  **Entire Contract**

By acceptance of this policy the Named Insured attests that:

1.  All of the information and statements provided to the Company by the Named Insured, including, but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the Named Insured;

2.  This policy is issued in reliance upon the Named Insured's representations;

3.  This policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the Named Insured to the Company, embody all of the agreements existing between the Named Insured and the Company and shall constitute the entire contract between the Named Insured and the Company; and

4.  Any material misrepresentation or concealment by the Named Insured or the Named Insured's agent will render the policy null and void and relieve the Company from all liability herein.

L.  **Notices**

Other than claims, any notices required to be given by the Named Insured will be submitted in writing to the Company, or its authorized representative.  If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

M.  **Assignment**

No assignment of interest of the Named Insured under this policy is valid, unless the Company's written consent is endorsed hereon.

N.  **Liberalization**

If the Company obtains approval for any amended state filing in the jurisdiction in which this policy is issued that would broaden coverage under this policy form NAV RAL NIC PF (02 11) without additional premium at any time during the current policy period, the broadened coverage will immediately apply to this policy, except that it will not apply to claims that were first made against the Named Insured prior to the effective date of such revision.

Exhibit A
19 of 24  -29-

O.  Examination of Your Books and Records

The **Company** may examine and audit the books and records of the **Named Insured**, as they relate to this policy, at any time during the **policy period** and up to three (3) years afterward.

P.  Reimbursement

While the **Company** has no duty to do so, if the **Company** pays **damages** and **claim expenses**:

1.  Within the amount of the applicable deductible; or

2.  In excess of the applicable Limit of Liability; or

3.  Under a reservation of rights to seek reimbursement, and it is determined that the **Company** is entitled to reimbursement.

Upon written demand, the **Named Insured** shall repay such amounts to the **Company** within 30 days.  Failure to pay any amount indicated may lead to policy termination.

VI. EXTENDED REPORTING PERIODS

A.  Automatic Extended Reporting Period

If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of real estate appraisers errors and omissions insurance within sixty (60) days of the termination of the **policy period**.  This automatic **extended reporting period** will terminate after sixty (60) days.

B.  Optional Extended Reporting Period

1.  If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **extended reporting period** of one, two or three years.  Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:

    a.  Written notice to the **Company**; and

    b.  With the written notice, the amount of additional premium described below.

2.  The non-refundable additional premium for the optional **extended reporting period** shall be:

    a.  For a one (1) year **extended reporting period**, 100% of the annual premium for the policy; or

    b.  For a two (2) year **extended reporting period**, 135% of the annual premium for the policy; or,

    c.  For a three (3) year **extended reporting period**, 150% of the annual premium for the policy.

3. The first sixty (60) days of the optional **extended reporting period**, if it is purchased, shall run concurrently with the automatic **extended reporting period**.

C. Death or Disability Reporting Period Option

In the event the **Named Insured** dies or becomes permanently and totally disabled during the **policy period**, an unlimited **extended reporting period** will be granted at no additional premium, provided that:

1. Within ninety (90) days of the of the death or permanent and total disability, the **Named Insured** or the **Named Insured's** estate requests the unlimited **extended reporting period**; and

2. The **Named Insured's** estate furnishes written evidence and proof of the **Named Insured's** death; or

3. The **Named Insured** provides evidence and proof of the permanent and total disability, including the date of the actual disability and written certification by the **Named Insured's** attending physician.

D. Retirement Reporting Period Option

1. If, after the **Named Insured** reaches the age of 65, and having been continuously insured by the **Company** on a claims-made basis for a minimum of 5 years, the **Named Insured** retires during the **policy period**, an unlimited **extended reporting period** will be granted at no additional premium; or

2. If the **Named Insured** retires from the appraisal business during the **policy period**, an unlimited **extended reporting period** can be purchased for a non-refundable additional premium of 160% of annual premium.

Such right must be exercised by the **Named Insured** within sixty (60) days of the retirement by providing:

a. Written notice to the **Company**; and

b. With the written notice, if applicable, the amount of additional premium described in paragraph D.2. above.

E. Extended Reporting Period Limits of Liability

The **damages** limit of liability and **claim expenses** limit of liability of the **Company** for all **claims** reported during any **extended reporting period** will be part of and not in addition to the **damages** limit of liability and **claim expenses** limit of liability, respectively, for the **policy period** set forth in item 4. in the Declarations.

F. Elimination of Right to Any Extended Reporting Period

There is no right to any **extended reporting period** if the **Company** cancels or refuses to renew this policy due to:

1. Nonpayment of amounts due under this policy;

2. Noncompliance by the **Named Insured** with any of the terms and conditions of this policy;

NAV RAL NIC PF (02 11)                         13 of 14

Exhibit A

3.  Any material misrepresentation or omission in the application or the supplementary information and statements provided by the Named Insured for this policy.

G.  Extended Reporting Period - Not a New Policy

The **extended reporting period** will not be construed to be a new policy and any **claim** submitted during such period will otherwise be governed by this policy.



**LANDY**
*"Insurance for professionals"*

June 27,2012

Mr. Dominic  J. Dublino
39569 Currant Court
Murrieta, CA  92563

Re: Real Estate Appraisers Errors and Omissions Insurance Policy
Policy Number: PH12RAL105287IV
Policy Term: 6/25/12 to 6/25/13

Dear Mr. Dublino:

Thank you for renewing your Real Estate Appraiser Errors and Omission policy through our online automated system.  Due to a programming error the attached endorsement was inadvertently left off your policy this year by mistake. It was attached to your policy last year and should have been attached this year. Please attach it to your policy this year.

We appreciate your business and again apologize for this error.

Regards,

Betsy A Magnuson
President
Herbert H. Landy Insurance Agency, Inc.

Encl.

**Herbert H. Landy Insurance Agency, Inc.** 75 Second Ave. Suite 410 Needham, MA 02494-2876 Office: (781) 449-7711 Fax: (781) 449-7908
*Visit us at www.landy.com*

Exhibit A
23 of 24  -33-

This endorsement # 3, effective 06/25/2012 forms a part of Policy # PH12RAL105287IV
issued to Dominic J. Dublino

# REGULATORY CLAIMS SUBLIMIT - CLAIM EXPENSES ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium charged, it is agreed that the following is added to Section IV. EXCLUSIONS of the policy:

Based on or arising out of any claim made by, or on behalf of, the Federal Deposit Insurance Corporation or any similar federal or state regulatory agency (a "Regulatory Claim").

It is further agreed that the following is added to Section II. LIMITS OF LIABILITY AND DEDUCTIBLE of the policy:

K.   Regulatory Claims Sublimit

Notwithstanding the Exclusion above, the Company will pay on behalf of the Named Insured, claim expenses incurred by the Named Insured in defense of a Regulatory Claim otherwise covered under this policy, subject to an aggregate maximum sublimit of liability of $100,000 for all such Regulatory Claims (the "Regulatory Claims Sublimit"). The Regulatory Claims Sublimit shall be part of, and not in addition to, the amount shown in item 4D. in the Declarations as the "Claim expenses Limit of Liability - Policy Aggregate."

All other provisions of this policy remain unchanged.

NAV RAL 003 (02 11)                               Page 1 of 1                               DUBD81-1

AO 440 (Rev. 06/12)  Summons in a Civil Action

## UNITED STATES DISTRICT COURT
Central District   for the   Western Division

| | | |
|---|---|---|
| Navigators Insurance Company | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) | |
| Dominic J. Dublino; Federal Deposit Insurance | ) | EDCV13-2110 TJH (SPx) |
| Corporation, as receiver for AmTrust Bank | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Dominic J. Dublino
39569 Currant Court
Murrieta, CA 92563

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Frederick S. Reisz
Kenton L. Robinson
Meyers McConnell Reisz Siderman
11859 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone (310) 312-0772

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  NOV 1 8 2013   _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

## UNITED STATES DISTRICT COURT

Central District    for the    Western Division

| | |
|---|---|
| Navigators Insurance Company | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Dominic J. Dublino; Federal Deposit Insurance | ) |
| Corporation, as receiver for AmTrust Bank | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

EDCV13-2110 GAF (SPx)

Civil Action No.

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Federal Deposit Insurance Corporation
Serve:  James Meyer
Field Supervisor, Columbus Office
7965 North High Street, Suite 250
Columbus, OH 43235

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:      Federick S. Reisz
Kenton L. Robinson
Meyers McConnell Reisz Siderman
11859 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone (310) 312-0772

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

NOV 1 8 2013

Date

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

1134

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Navigators Insurance Company

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Dominic Dublino; Federal Deposit Insurance Corporation, as receiver for AmTrust Bank

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

Frederick S. Reisz, Kenton L. Robinson, MEYERS MCCONNELL REISZ SIDERMAN, P.C., 11859 Wilshire Blvd., 4th Floor, Los Angeles, CA 90025, Telephone: (310) 312-0772

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

Unknown

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sec. 2201, insurance coverage action for declaratory relief

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☒ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: EDCV13-2110

CV-71 (09/13) — CIVIL COVER SHEET — Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? <br><br> ☐ Yes ☒ No <br><br> If "no," go to Question B. If "yes," check the box that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? <br><br> ☒ Yes ☐ No <br><br> If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? <br> Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? <br> Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☒ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C <br><br> ☐ only 1 answer in Column C and no answers in Column D <br><br> Your case will initially be assigned to the <br> **SOUTHERN DIVISION.** <br> Enter "Southern" in response to Question D, below. <br><br> If none applies, answer question C2 to the right. ➡ | ☒ 2 or more answers in Column D <br><br> ☐ only 1 answer in Column D and no answers in Column C <br><br> Your case will initially be assigned to the <br> **EASTERN DIVISION.** <br> Enter "Eastern" in response to Question D, below. <br><br> If none applies, go to the box below. ⬇ |

| Your case will initially be assigned to the <br> **WESTERN DIVISION.** <br> Enter "Western" in response to Question D below. |
|---|

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | **EASTERN DIVISION** |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☐ NO   ☒ YES

If yes, list case number(s):   5:12-cv-2121-TJH-OP

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   _Frederick S. Ra_____   DATE: 11/14/13

---

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Gary A. Feess _____ and the assigned Magistrate Judge is _____ Sheri Pym _____ .

The case number on all documents filed with the Court should read as follows:

### 5:13CV2110 GAF SPx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

November 18, 2013
_____
Date

By   J.Prado
_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES